■ AUDRE GOLDFEDER et al., Doing Business as CLAREMONT NURSING HOME, Petitioners, v. HOLLIS S. INGRAHAM, as Commissioner of Health of the State of New York, et al., Respondents.— Proceeding pursuant to article 78 of the CPLR to review a determination of the respondent State Commissioner of Social Services, dated December 20, 1972, which, with respect to petitioners' nursing home in the City of Mount Vernon and after a hearing, refused to grant petitioners "a waiver of the relevant provisions of the Life Safety Code of the National Fire Protection Association (21st Ed., 1967)" and to certify petitioners "as a provider of skilled nursing home care" under the State "Medicaid" program established under title XIX of the Federal Social Security Act (U. S. Code, tit. 42, § 1396a *et seq.*). Determination confirmed, without costs (*Matter of Miramichi Nursing Home* v. *Lavine*, 42 A D 2d 570). The stay granted in the order to show cause of the Special Term, Westchester County, dated January 5, 1973, instituting this proceeding, which stay is deemed a stay of all action by respondents in furtherance of the determination under review, shall be deemed in effect and continued until four months after entry of the order to be made hereon, and for a further period, conditionally, as follows: 1. If, prior to the expiration of the four-month continuation of the stay, petitioners shall (a) complete the "Specified Correction" hereinafter set forth and (b) submit to respondent State Commissioner of Social Services a written application for a waiver and a continued certification as providers of skilled nursing home care, based upon proof of completion of the "Specified Correction", the stay shall be further continued pending determination by said commissioner of the application, which application we direct shall be granted by him upon ascertainment that the "Specified Correction" has in fact been made. 2. The Specified Correction is as follows: Install an automatic sprinkler system throughout the facility in accordance with section 10–234 of the Life Safety Code (21st ed., 1967). Petitioners are operators of one of the "Maxwell" nursing homes (*Maxwell* v. *Wyman*, 458 F. 2d 1146) which were originally decertified by the State Department of Social Services at the end of 1971 for failure to comply with the requirements of the Life Safety Code of the National Fire Protection Association as required by title XIX of the Social Security Act (U. S. Code, tit. 42, § 1396a, subd. [a], par. [28], cl. [F], subcl. [i]; Code of Fed. Reg., tit. 45, § 249.33, subd. [a], par. [1], cl. [vii]). (See *Matter of Maxwell* v. *Lavine*, 41 A D 2d 346.) By Federal court action, however, these decertifications were stayed pending hearings concerning whether a waiver of the applicable sections of the Life Safety Code should be granted

(*Maxwell* v. *Wyman, supra*). Waiver is allowed where unreasonable hardship is shown and the waiver will not adversely affect the health and safety of the patients (U. S. Code, tit. 42, § 1386a, subd. [a], par. [28], cl. [F], subcl. [i]). We are of the opinion that there was substantial evidence that petitioners were violating sections 10–1322 and 10–2341 of the subject Life Safety Code in that their building was not of at least two-hour fire-resistive construction and did not have an automatic sprinkler system. Under these circumstances, a waiver was needed (see *Kruger* v. *Ingraham*, 42 A D 2d 983) and, on the evidence presented at the hearing, the Commissioner of Social Services properly concluded that (as the facility is presently constituted) petitioners had failed to establish that a waiver would not adversely affect the health and safety of the patients (*Matter of Miramichi Nursing Home* v. *Lavine*, 42 A D 2d 570, *supra*). However, we note that the facility has been continuously licensed since petitioners took it over in 1963 and had been operated as a licensed nursing home for about 10 years prior to that time. It is protected by an automatic heat detection system with a coded alarm to the local Fire Department, to alert the latter that an emergency is emanating from this nursing home. The Mount Vernon Fire Department is all-professional. Its response time is approximately two minutes. Petitioners adduced considerable evidence of other fire protection systems and devices. James P. Regan, a recognized fire protection expert, testified that there was no fire hazard and that nothing in the facility would adversely affect the health and safety of the patients. It was his opinion that a dry or wet complete sprinkler system "could cure" any section 10–1322 deficiency. Petitioner Goldfeder testified that prior to her purchase of the facility an official of the State Department of Social Services (which then directly supervised nursing homes) approved the then existing number of beds and assured her that the facility was safe and that there were no problems. Mrs. Goldfeder also testified that she never would have purchased the facility if the State had told her that it was unsafe. She further testified that she has never been advised by the State Department of Health or by the Mount Vernon Fire Department that she should install a sprinkler system. In a December, 1971 letter to respondents, she offered to install a full sprinkler system, but never received any answer. It is to be noted that the State Hospital Code, which took effect in 1966, does not mandate a sprinkler system. Subdivisions (1) of section 711.5 thereof states that "Each existing nursing home shall have a satisfactory sprinkling and/or a fire detecting system with an alarm connection installed in a manner satisfactory to the department" (10 NYCRR 711.5 [1]). It is thus clear that although the determination under review must be confirmed, the facility as presently constituted does meet the standards of the State Health Department with respect to non-Medicaid patients. Under all the circumstances, in the interests of justice, we are granting a limited continuation of the stay in order to afford petitioners an opportunity to promptly make those Life Safety Code corrections which can reasonably be made, i.e., the "Specified Correction" — which, if originally expressly and clearly required by respondents of petitioners, might have obviated the hearing which was held and these legal proceedings. Rabin, P. J., Hopkins, Munder, Latham and Shapiro, JJ., concur.